IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| SUE RATCHFORD,<br>　　　Plaintiff,<br><br>v.<br><br>REGIONS FINANCIAL<br>CORPORATION, REGIONS BANK, a<br>subsidiary of REGION FINANCIAL<br>CORPORATION,<br>　　　Defendants. | CIVIL ACTION NO.:<br><br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

Comes now SUE RATCHFORD ("Ratchford" or "Plaintiff") and files this renewal action, asserting claims against REGIONS FINANCIAL CORPORATION, herein "RFC", and REGIONS BANK, a subsidiary of REGIONS FINANCIAL CORPORATION, herein collectively referred to as "Defendants" under the Fair Labor Standards Act, 29 U.S.C. §201 et. seq. ("FLSA"), for unpaid overtime compensation, liquidated damages, reasonable expenses of litigation and attorneys' fees, on the grounds set forth below.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1337 and 29 U.S.C. §216(b).

2. This Court has venue for all causes of actions stated herein pursuant to 28 U.S.C. §1391(b)(2) as some of the acts alleged as a basis for the federal claims took place within this Court's jurisdictional boundaries. Further, Defendants do business in this District, including conducting business by way of offices in this District, and are subject to this Court's personal jurisdiction.

3. Venue is appropriate in this Division as some of the acts alleged as a basis for the federal claims took place within this Division's jurisdictional boundaries.

## PARTIES

### The Plaintiff

4. Plaintiff Sue Ratchford was formerly employed by Defendants as a Mortgage Loan Originator (MLO).

5. Ratchford began her employment for Defendants on or about June 5, 1995, and worked for them until her separation on or about November 9, 2015.

Plaintiff Ratchford worked in Defendants' Whitfield County, Georgia office. Plaintiff Ratchford is a resident of Whitfield County, Georgia.

6. With one exception noted below, Ratchford was regularly denied overtime compensation during the term of her employment.

## The Defendants

7. Defendant RFC is a financial holding company incorporated under the laws of the state of Delaware, with its corporate headquarters and principal place of business in Birmingham, Alabama. At all times relevant to this action, RFC has conducted its banking operations through its subsidiary, Regions Bank, an Alabama-chartered commercial bank that is a member of the Federal Reserve System, with its headquarters and principal place of business in Birmingham, Alabama. Both Defendants may be served by way of Corporation Service Company, who serves as the Registered Agent for both Defendants, and who is located at 40 Technology Parkway South, Suite 300, Norcross, Georgia, 30092.

## RENEWAL OF PRIOR ACTION

8. This action recommences the claims Ratchford originally asserted in a pending action in the Gainesville Division of this Court, Civil Action No. 2:17-cv-

0100-RWS. On May 22, 2017, Ratchford filed suit, along with four other plaintiffs, against these Defendants. In that suit, the Plaintiffs, individually and on behalf of others similarly situated, asserted a claim for violation of the FLSA due to Defendants' failure to pay overtime compensation.

9. On March 12, 2018, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), Ratchford and Defendants filed a joint stipulation of dismissal without prejudice as to her claims, stating that Ratchford and Defendants would bear their own respective attorney's fees and costs as they related to Ratchford's individual claims. The Clerk's entry of dismissal approving the stipulation of dismissal of Ratchford was entered the following day. The claims of the other four plaintiffs remain pending.

10. In her individual capacity, Ratchford timely brings this renewal action. Ratchford has not exercised the privilege of renewal previously, and to her knowledge, there are no unpaid court costs. Like the prior action, this renewal action asserts a claim for violation of the FLSA due to Defendants' failure to pay overtime compensation.

## FACTS

### Defendants' Operations

10. Defendant RFC is listed on the New York Stock Exchange (NYSE; RF), with over $124 billion in assets, and is a member of the S&P 500 stock index. RFC, through its subsidiaries, forms one of the United States' largest full-service providers of consumer and commercial banking, wealth management, mortgage, and insurance products and services.

11. As stated above, Defendant RFC conducts its banking operations through Defendant Regions Bank. In its 2017 Annual Review, RFC stated that it serves "customers across the South, Midwest and Texas, and through its subsidiary, Regions Bank, operates approximately 1,500 banking offices and 1,900 ATMs."

12. Defendants are engaged in business in the financial field, and accordingly, offer consumer banking services related to residential mortgages. In furtherance of its consumer banking services, and at all times relevant to this suit, Defendants have employed MLO's such as Ratchford.

13. At all times relevant to this suit, Defendants had an annual gross volume of sales made that was more than $500,000; had employees engaged in

commerce; and were enterprises engaged in commerce within the meaning of 29 § U.S.C. 203(s)(1).

14. Regions Bank has been an employer of MLO's, including Ratchford, within the meaning 29 U.S.C. § 203(d), and it is not exempt from FLSA's overtime provisions.

15. Regions Bank suffered or permitted Ratchford to work. Among other things, Regions Bank has exercised control and supervision over Ratchford. Further, Regions Bank has had the right to directly or indirectly hire, fire, or modify the employment conditions of Ratchford. Thus, as an economic reality, Ratchford was dependent on Regions Bank for her employment.

16. RFC has been an employer of MLO's, including Ratchford, within the meaning of 29 U.S.C. §203 (d) and (g), and it is not exempt from FLSA's overtime provisions.

17. RFC suffered or permitted Ratchford to work. Among other things, RFC has administered various benefits plans to its employees, including Ratchford. Thus, as an economic reality, Ratchford was dependent on RFC for her employment.

18. Defendants have acted as joint employers of Ratchford within the meaning of the FLSA, 29 U.S.C § 203(d) and (g), and its implementing regulations (including 29 C.F.R. § 791.2), because among other things, Regions Bank is acting directly in the interest of RFC.

### The Plaintiff's History of Working Overtime

19. Throughout the term of her employment with Defendants, Ratchford worked in excess of 40 hours per week during each pay period. Yet, with the exception of one pay period, she was not compensated in accordance with the FLSA for the time she worked in excess of 40 hours per week (the "overtime worked").

20. At all times relevant to this lawsuit, Defendants were aware that Ratchford was working overtime hours without compensation.

21. During all times relevant to this suit, Defendants classified Ratchford as non-exempt under the FLSA.

22. During one pay period, in approximately January 2013, Ratchford turned in her hours of work, including the amount of overtime worked. On that occasion, Ratchford was paid overtime compensation. However, Ratchford was

told by her immediate supervisor to not turn in any further overtime hours or include overtime hours in any time records she turned in, even if she worked in excess of 40 hours per week. (*See* Affidavit of David Viduna, at pg. 3, attached as Exhibit 1).

23. Ratchford was therefore forced to perform uncompensated, "off the clock" overtime work, including work during her lunch breaks, before and after business hours, on the weekends, and while on vacation.

24. Ratchford's work after business hours was well-known. The local newspaper, the Dalton Daily-Citizen, published an article on April 28, 2014 after a reporter shadowed a local police officer. Though the article did not name her, it referred to Ratchford as "one woman who worked at a bank used to call officers each time she left for the night. She would wait until the officer pulled into the parking lot to get in her car."

25. Ratchford, during the period at issue in this lawsuit, worked in each pay period approximately 20 to 30 hours per week of overtime, for which she was not compensated.

26. Plaintiff Ratchford entered into a tolling agreement and extension with Regions Bank. (*See* Ratchford Tolling Agreement and Extension, attached as

8

Exhibit 2 hereto). In the tolling agreement, the parties agreed, inter alia, that any and all damages awarded to Plaintiff Ratchford under FLSA shall be calculated as if the Complaint had been filed on June 20, 2016, and that the Plaintiff be put in the same position she would have been had she filed suit on June 20, 2016. The duration of the tolling agreement continued until 30 days after either party gave notice to the other of intent to terminate. On April 20, 2017, Plaintiff Ratchford terminated the tolling agreement. (*See* Termination Email and Letter, attached as Exhibit 3 hereto).

27. On March 12, 2018, Ratchford and Defendants entered into another tolling agreement, which states that Ratchford's renewal action shall relate back to the date her original lawsuit was filed as to the claims previously asserted in that lawsuit.

### The "Formula," Defendants' Knowledge of Overtime Violations, and Plaintiff's Duties as an MLO

28. As an MLO, Ratchford's primary duties related to making sales of mortgages for Defendants. Thus, Ratchford was expected to promote and originate loans, take loan applications, and take all further necessary steps to have the loans processed and closed or finalized. Defendants expected Ratchford to originate,

produce, and finalize as many loans as possible throughout the terms of her employment to respond to market demand and maximize income for the Defendants.

29. During all times relevant to this lawsuit, Defendants employed "Mortgage Production Managers" to supervise MLO's like Ratchford.

30. One mortgage production manager overseeing the work of Ratchford was David Viduna, whose Affidavit is attached hereto. At the time of his retirement in November 2014, Viduna was responsible for mortgage production throughout Northwest Georgia. (Viduna Aff., at 1). At the time of his retirement, Viduna worked out of Defendants' Jasper, Georgia location.

31. In turn, Defendants employed regional "Area Managers" to oversee Mortgage Production Managers (such as David Viduna). At the time of his retirement, Viduna reported to East Region Area Manager Debra Douglas. (Viduna Aff., at 1).

32. During the term of Ratchford's employment, Defendants utilized a "**Formula**," stating that MLO's like Ratchford should be able to originate and finalize (or "close") seven to eight (7 to 8) loans per month while working no more than 40 hours per week. (Viduna Affidavit, at pg. 3). Thus Defendants, by creation

10

of the Formula, expected and predicted that MLO's like Ratchford produce approximately 90 loans per calendar year (7.5 loans per month), while working no more than 40 hours per week.

33. The Formula was periodically communicated to management and supervisory staff and thereby to MLO's like Ratchford. (Viduna Aff., at pg. 2). For example, Area Manager Debra Douglas disseminated the Formula to Viduna and other Mortgage Production Managers. In periodic conference calls between Douglas, Viduna, and the other Mortgage Production Managers (numbering approximately nine throughout the "East Region"), the Formula was discussed on numerous occasions. (Viduna Aff., at 2). The Mortgage Production Managers, in turn, discussed the Formula with the MLO's under their supervision. (*Id.*).

34. To meet market demand, Ratchford regularly produced loans in numbers exceeding 90 per year while employed by Defendants. In at least one year, Ratchford produced over 180 loans for Defendants.

35. Further, Defendants' management knew that the "Formula" significantly underestimated the amount of work hours necessary to perform all the duties MLO's such as Ratchford were required to perform.

36. Regardless of the accuracy of the Formula relative to the amount of time necessary to meet its requirements, Defendants' upper management did not condone employees reporting overtime or hours worked in excess of 40 hours per week. MLO's such as Ratchford were regularly instructed by their supervisors to not report any overtime hours. (Viduna Aff., at pg. 2).

37. According to David Viduna, it was "an open secret, even a 'joke' among the managerial and supervisory staff that, due to the demands of their work load, loan originators like Sue Ratchford often worked far in excess of 40 hours per week" without the requisite overtime compensation. (Viduna Aff., at pp. 2-3).

38. Viduna opined that Ratchford "was physically present in the bank, working, an average of at least fifty (50) to sixty (60) hours per week, at a minimum." (Viduna Aff., at 2). Viduna based this opinion on his own observations, her record of productivity, and conversations with her. (*Id.*).

39. Moreover, Ratchford was not the only MLO that regularly worked overtime just to meet the job requirements. (Viduna Aff., at 3).

40. Accordingly, district managers such as Viduna knew that the Formula did not accurately reflect – but rather grossly underestimated – the amount of time required to discharge the MLO's' duties. In fact, it was an "open secret" discussed

12

among district managers that MLO's such as Ratchford were working substantial amounts of overtime (without compensation) in order to keep up with the work load. (Viduna Aff., at 3). Thus, as a general matter, Defendants did not compensate Ratchford at the rate of one and one-half times her "regular rate of pay" (as that phrase is defined in the FLSA and its implementing regulations, including 29 C.F.R. §778.117-.120) for hours worked over 40 each week.

41. Ratchford continued to work overtime without the requisite compensation after Viduna's retirement until the termination of her employment at Regions.

42. Defendants instructed Ratchford to not turn in overtime hours for pay even though they knew that the MLO's were not exempt from overtime pay requirements under FLSA. Defendants knew or should have known that on March 24, 2010, the Department of Labor's Wage and Hour Division issued "Administrator's Interpretation No. 2010-1," which stated, among other things, that employees who perform the typical job duties of a mortgage loan officer, including mortgage loan origination, do not qualify as bona fide administrative employees exempt under 29 U.S.C. § 213(a)(1).

43. The primary duty of Ratchford was making sales of mortgages for Defendants. (*See* Viduna Aff., at 1).

44. At least during Viduna's tenure, Ratchford was paid on a "base draw" or "monthly draw" basis, which required her to originate and ultimately close a certain number of loans per month to cover her draw. (Viduna Aff., at 3). The draw provided each month to Ratchford was subtracted from the monthly production of closed loans, with the excess paid to Ratchford or the deficit carried over to the next month as a balance due against future closed production. (Viduna Aff., at 3). Ratchford's regular rate of pay included any commission that was in excess of the "base draw."

45. Ratchford performed other tasks in furtherance of her primary duty of making sales, including ensuring proper documentation, processing, and compliance of all loan applications. (*See* Viduna Aff., at 1-2).

46. Although the primary duty of MLO's is sales, Defendants also required Ratchford to spend all necessary time to satisfy other customer service needs, even though such tasks were not directly factored into her method of compensation or productivity requirements. These tasks included providing "floor coverage," such as greeting and assisting walk-in customers at bank branches.

47. Ratchford performed her work primarily at the Defendants' offices and/or branches or at her home offices.

48. None of Ratchford's primary duties included management duties; customarily or regularly directing the work of at least two or more other full-time employees; having any authority regarding the hiring, firing, advancement, promotion, changing the status of other employees; or any other duties related to the management or general business operations (as such terms are understood in 29 U.S.C. § 213(a)(1) or 29 C.F.R. §541) of Defendants.

49. As Ratchford's primary duty was to sell mortgages, none of her primary duties included the exercise of discretion and independent judgment with respect to matters of significance (as such terms are understood in 29 U.S.C. § 213(a)(1) or 29 C.F.R. §541.203). Ratchford was not acting as a "professional employee" for Defendants, as that term is utilized by 29 U.S.C. § 213(a)(1) and 29 C.F.R §541.300.

## COUNT I

### Violation of Fair Labor Standards Act

50. Ratchford re-alleges the proceeding paragraphs above and incorporate them by reference as if fully set forth here.

51. Ratchford worked significantly more than forty (40) hours per week on a regular basis at all times relevant to this suit. Nonetheless, during all times relevant to this suit, Ratchford did not receive overtime compensation at one and one-half times her regular rate of pay from Defendants, in violation of the FLSA, 29 U.S.C. §207.

52. By engaging in the above-described conduct, Defendants knowingly, intentionally, and willfully violated the FLSA with respect to Ratchford. Defendants did not have any good faith basis for believing that their failure and refusal to pay overtime compensation to Ratchford was in compliance with the FLSA.

53. Defendants communicated to Ratchford the expectation that she work in excess of forty (40) hours per week. However, Defendants simultaneously instructed, through management, Ratchford not to turn in her overtime hours for pay.

54. As a direct and proximate result of the above-described conduct, Ratchford has lost significant wages.

55. Defendants are in possession of records showing the amount of overtime that Ratchford worked. At a minimum, Defendants are in possession of

records showing the amount of loans that Ratchford originated and closed during the time period relevant to this case.

56. Alternatively, Defendants' failure to make, keep, or preserve records of hours worked by Ratchford constitutes a violation of 29 U.S.C. §211(c).

57. Said violations give rise to a claim for relief under the FLSA for Ratchford for:

(A) Unpaid overtime compensation accrued during the liability period;

(B) Liquidated damages in an amount equal to the unpaid compensation;

(C) Pre- and post-judgment interest; and

(D) Reasonable attorney fees and expenses of litigation, pursuant to 29 U.S.C § 216.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court do the following:

(A) Require Defendants to pay Plaintiff damages for lost overtime compensation accrued during the liability period, calculated at one and one-half

times the proper rate that Plaintiff would have received but for the Defendants' unlawful conduct;

(B)  Require Defendants to pay to Plaintiff liquidated damages as provided for under the FLSA;

(C)  Award Plaintiff pre- and-post-judgment interest;

(D)  Award Plaintiff her reasonable attorneys' fees, costs and expenses of this lawsuit;

(E)  Permit a trial by jury on all issues so triable; and

(F)  Provide such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff herein demands a jury trial on all claims for which they have a right to a jury.

This 4th day of May, 2018.

*[signatures on following page]*

| BARNES LAW GROUP, LLC | R. LESLIE WAYCASTER, JR P.C. |
|---|---|
| /s/ Roy E. Barnes | /s/ R. Leslie Waycaster, Jr. |
| Roy E. Barnes | R. Leslie Waycaster, Jr. |
| Ga Bar No. 039000 | Ga. Bar No. 742500 |
| J. Cameron Tribble | Timothy H. Allred |
| Ga Bar No. 754759 | Ga. Bar No. 013195 |
| 31 Atlanta Street | 130 W. King Street |
| Marietta, Ga. 30060 | Dalton, GA 30720 |
| Phone: 770-227-6375 | Phone: 706-226-0100 |
| Fax: 770-227-6373 | leslie@waycaster-law.com |
| roy@barneslawgroup.com | tim@waycaster-law.com |
| ctribble@barneslawgroup.com | |

*Attorneys for Plaintiff*